UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| BRYAN HIGA, | CIV. NO. 19-00664 LEK-WRP |
| Plaintiff, | |
| vs. | |
| HIROMICHI KOBAYASHI WARDEN, | |
| Defendant. | |

**ORDER DENYING PETITION UNDER 28 U.S.C. § 2241 FOR A
WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is pro se Petitioner Bryan Higa's ("Higa") Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus ("Petition"), filed on December 13, 2019.  [Dkt. no. 1.] Respondent Hiromichi Kobayashi, Warden ("Warden Kobayashi") filed his answer to the Petition ("Answer") on February 10, 2020, and Higa filed his reply in support of the Petition ("Reply") on February 21, 2020.  [Dkt. nos. 4, 5.]  The Reply includes a request for judicial notice, and Warden Kobayashi filed his position statement regarding the request on March 12, 2020.  [Dkt. no. 7.]  Higa's Petition is hereby denied, and a certificate of appealability is also denied, for the reasons set forth below.

## BACKGROUND

In December 2007, Higa was sentenced to 220 months of imprisonment, consisting of 100 months for conspiracy to obstruct interstate commerce by robbery, to be served consecutively to 120 months for using, carrying, and discharging a firearm during and in relation to the robbery.  [United States v. Higa, CR 06-00395 DKW, Judgment in a Criminal Case, filed 12/10/07 (dkt. no. 97), at 1-3.]  The 100-month term was to run concurrently with Higa's 100-month sentence for conspiracy to possess with intent to distribute five grams or more of methamphetamine in another case.  [United States v. Higa, CR 07-00104 DAE, Judgment in a Criminal Case, filed 12/11/07 (dkt. no. 58), at 1-2.]  At all times relevant to the Petition, Higa has been serving his sentence at the Federal Detention Center in Honolulu ("FDC Honolulu"), which is operated by the Federal Bureau of Prisons ("BOP").  [Petition, Statement of Uncontestable Facts ("Higa Decl.") at ¶ 1.]  His projected release date is February 11, 2022.  [Answer, Decl. of Brian Puukila ("Puukila Decl.") at ¶ 6c.[1]]

The Petition arises from the following events.  On April 28, 2019, Higa called his brother, Crayton Higa

---

[1] Brian Puukila is a lieutenant and the Discipline Hearing Officer ("DHO") at FDC Honolulu.  [Puukila Decl. at ¶ 1.]

2

("Crayton"), and asked Crayton to find out whether Higa's girlfriend, "Syna," would be visiting Higa that afternoon. [Higa Decl. at ¶¶ 2, 5-6.]  Crayton was unable to reach Syna at that time.  Later the same day, Higa called Crayton on his black telephone and asked him to call Syna again.  Crayton called Syna on his gold telephone and put that call on speakerphone, while still on the black telephone with Higa.  [Id. at ¶¶ 7-9.]  Higa states: "After a brief conversation, (31 seconds) with Syna, which I did not, nor could have taken part in, [Crayton] hung up and relayed her answer to me."  [Id. at ¶ 10.]  The contemporaneous calls between Higa and Crayton and Crayton and Syna will be referred to as "the Incident."  Higa emphasizes that the two telephone lines were never connected during the Incident.  [Id. at ¶ 11.]

On May 2, 2019, High received an Incident Report, which "alleg[ed] the conduct described above constituted 'a three-way call' under BOP Policy Code 297."  Id. at ¶ 12; see also Petition, dkt. no. 1-2 (Incident Report).[2]  Higa asked Crayton to send pictures of the two telephones displaying their call logs so that Higa could show that two separate telephone

_____

[2] Because the supporting documents attached to the Petition are not identified in a consistent manner, all citations to the supporting documents refer to the docket numbers in the district court's electronic case filing system.

lines were used during the Incident.  Higa also asked Crayton to write a letter explaining what happened.  Higa Decl. at ¶ 14; see also Petition, dkt. no. 1-3 (letter to Higa from Crayton regarding the Incident ("Crayton Letter")), dkt. no. 1-4 (photograph of black telephone showing incoming call on 4/28/19 at 11:58), dkt. no. 1-5 (photograph of gold telephone showing outgoing calls on 4/28/19 at 11:58 and 11:12), dkt. no. 1-6 (photograph of two telephones, side by side).[3]

A disciplinary hearing was held on May 20, 2019.  According to Higa, he brought the documentary evidence to the hearing and attempted to submit it in his defense.  However, DHO Puukila refused to look at Higa's evidence.  [Higa Decl.at ¶¶ 16-18.]  Higa was found guilty of violating Code 297 and lost fourteen days of good time credit.  Id. at ¶ 19; Petition, dkt. no. 1-7, at 1-3 (Discipline Hearing Officer Report ("Higa DHO Report")).  Higa's position is that he is actually innocent of the code violation because Crayton used two separate telephone lines that were never connected, and therefore Higa did not participate in a three-way, or third-party, call.  [Higa Decl. at ¶¶ 20-21.]

---

[3] Docket numbers 1-4, 1-5, and 1-6 will be referred to collectively as "the Telephone Photographs."

Higa submitted a Regional Administrative Remedy Appeal form, dated June 9, 2019. [Petition, dkt. no. 1-7, at 4-5.] The Regional Director denied Higa's appeal on July 16, 2019. [Id. at 6.] Higa submitted a Central Office Administrative Remedy Appeal form, dated August 8, 2019. [Id. at 7-8.] The Administrator of National Inmate Appeals denied Higa's appeal on October 25, 2019. [Id. at 9.]

In the instant Petition, Higa argues: the DHO violated Higa's due process rights when he refused to consider Higa's evidence in the disciplinary proceedings ("Ground One"); there is no evidence to support the finding that Higa violated Code 297 ("Ground Two"); Higa could not have violated Code 297 because a 2011 amendment to the applicable regulation removed the term "third-party calling" ("Ground Three"); and Code 297 is unconstitutionally vague ("Ground Four"). Higa seeks an order requiring the BOP to expunge the Incident from his record and to restore his good time credits.

Warden Kobayashi presents evidence that, prior to the DHO hearing, Higa had a unit disciplinary committee ("UDC") review. During the UDC review, Higa said he asked Crayton what time Syna was going to visit, and Crayton decided to call her. The UDC referred the matter to DHO Puukila. [Puukila Decl. at ¶ 9.]

5

DHO Puukila does not have a specific recollection of Higa's hearing. [Id. at ¶ 12.] However, based on the Higa DHO Report, DHO Puukila states: he reviewed Higa's due process rights with Higa; Higa understood those rights; Higa acknowledged receipt of the Incident Report; Higa waived the right to have a staff representative at the hearing; Higa waived the right to present witnesses and evidence; and DHO Puukila noted Higa did not have any documentary evidence to submit. [Id. at ¶¶ 10-11.] DHO Puukila states his "normal course of business when [he] conduct[s] DHO hearings is to consider any documentary evidence an inmate presents to [him] for [the inmate's] defense." [Id. at ¶ 12.] The presentation of such evidence would be noted in the report and, because the Higa DHO Report states Higa waived the right to present evidence, Puukila is "confident that [Higa] did not present any documentary evidence at his DHO hearing." [Id. at ¶¶ 12-13.] "Based on the greater weight of the evidence," which included Higa's statements to DHO Puukila, Higa's statements to the investigator who initially looked into the Incident, and Higa's statements to the UDC, DHO Puukila "decided that [Higa] violated Code 297, Telephone Abuse Other than Criminal Activity." [Id. at ¶¶ 14-15.] In addition to the loss of good time credits, Higa lost three months of telephone privileges. [Id. at ¶ 16.] Warden Kobayashi acknowledges that Higa exhausted his administrative

remedies as to these disciplinary proceedings.  See id. at ¶ 21;

Answer at 7.  However, Warden Kobayashi argues all four grounds

asserted in the Petition fail on the merits.

## STANDARD

This district court has stated:

> When a federal . . . prisoner contends that
> he "is in custody in violation of the
> Constitution or laws or treaties of the United
> States," § 2241 confers a general grant of habeas
> jurisdiction.  28 U.S.C. § 2241(a) and (c)(3).  A
> district court considering an application for a
> writ of habeas corpus shall "award the writ or
> issue an order directing the respondent to show
> cause why the writ should not be granted, unless
> it appears from the application that the
> applicant or person detained is not entitled
> thereto."  28 U.S.C. § 2243.

> . . . .

> "Federal law opens two main avenues to
> relief on complaints related to imprisonment: a
> petition for writ of habeas corpus, 28 U.S.C.
> § 2254, and a complaint under . . . 42 U.S.C.
> § 1983." Muhammad v. Close, 540 U.S. 749, 750
> (2004) (per curiam).  Habeas relief extends to a
> prisoner in custody under the authority of the
> United States.  See 28 U.S.C. § 2241.  A
> petitioner challenging the manner, location, or
> conditions of the execution of his sentence must
> file a petition for writ of habeas corpus under
> 28 U.S.C. § 2241.  See, e.g., United States v.
> Giddings, 740 F.2d 770, 772 (9th Cir. 1984);
> Brown v. United States, 610 F.2d 672, 677 (9th
> Cir. 19[8]0) (distinguishing between a § 2255
> petition, which tests the imposed sentence, with
> a § 2241, which tests the sentence "as it is
> being executed").  "Challenges to the validity of
> any confinement or to particulars affecting its
> duration are the province of habeas corpus."
> Muhammad, 540 U.S. at 750 (citation omitted);
> Nettles v. Grounds, 830 F.3d 922, 934 (9th Cir.

2016) (en banc) (holding that a prisoner's claims
are within the core of habeas corpus if they
challenge the fact or duration of his conviction
or sentence).

Schulze v. Fed. Bureau of Prisons, CIVIL NO. 19-00669 JAO-WRP,

2019 WL 7038254, at *1-2 (D. Hawai`i Dec. 20, 2019) (some

alterations in Schulze) (footnote omitted).

        Because the issues raised in Higa's Petition are legal

issues that can be conclusively decided based on the parties'

submissions, an evidentiary hearing is not necessary.  See

Anderson v. United States, 898 F.2d 751, 753 (9th Cir. 1990)

(per curiam) ("because the record conclusively shows that

petitioner is not entitled to habeas corpus under 28 U.S.C.

§ 2241, no evidentiary hearing was required").  Higa's request

for an evidentiary hearing, [Petition at 9,] is therefore

denied.

## DISCUSSION

### I.   Judicial Notice

        In the Reply, Higa asks this Court to take judicial

notice of the following:

        FACT 1: Higa was specifically charged in
        this matter with being involved in "a three-way
        call," in violation of Code 297.  See Indecent
        [sic] Report . . . .

        FACT 2: "[A] three-way call is 'when someone
        else makes the call for you, they put you on
        hold, they click over, and they dial a number,
        and then when the person pick[s] up, then you
        answer the phone' and '[t]hey switch back over.'

8

Ultimately, three parties are participating in the phone call." Laurey v. Graham, 596 F. Supp. 2d 743, 754, n.3 (W.D.N.Y. 200[9]).

FACT 3: The term, "three-way call" does not exist anywhere in the text of the current version of Code 297 . . . .

FACT 4: A recording exists of the call relied on by the reporting officer who issued the Incident Report, it was also relied on by the Discipline Hearing Officer (DHO) in determining guilt (see Decl. of Brian Puukila (Doc. # 4-1)), yet, is conspicuously nowhere mentioned in Respondent's Answer or by its witness.

FACT 5: There were two cellular phones used in this case - not one. As the evidence shows and Respondent acknowledges (Answer at 9, 11), Higa called his brother's cell phone, his brother then called another person using a completely separate phone. At no time was Higa on the same line or did he speak to the third person; he was not "connected with a third party number."

FACT 6: Brian Puukila, the Discipline Hearing Officer (DHO) and witness for Respondent, declared under penalty of perjury that he "do[es] not specifically recall Petitioner's DHO hearing." Decl. (Doc. # 4-1), at 4, para. 12.

[Reply at 1-2 (some alterations in Reply) (some citations omitted).]  Fed. R. Evid. 201(a)-(c) states, in relevant part:

(a)  Scope.  This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

(b)  Kinds of Facts That May Be Judicially Noticed.  The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1)  is generally known within the trial court's territorial jurisdiction; or

9

(2)  can be accurately and readily
determined from sources whose accuracy
cannot reasonably be questioned.

(c)  Taking Notice.  The court:

. . . .

(2)  must take judicial notice if a party
requests it and the court is supplied with
the necessary information.

A.   **FACT 1**

Warden Kobayashi does not contest the authenticity of
the copy of the Incident Report attached to the Petition.
Because such reports are regularly maintained in BOP records,
the accuracy of the copy attached to the Petition can be readily
determined.  Higa's request for judicial notice of "FACT 1" is
granted insofar as the Court takes judicial notice of the copy
of the Incident Report attached to the Petition.  The Incident
Report describes the violation arising from the Incident as
"Telephone Abuse" pursuant to "Prohibited Act Code(s): 297."
[Petition, dkt. no. 1-2.]  The factual description of the
Incident states Higa placed a phone call, and the recipient of
that call "started a three-way call."  [Id.]  However, the Court
does not take judicial notice of the truth of the statements in
the Incident Report.  Cf. Trade W., Inc. v. Oriental Trading
Co., CIVIL 16-00474 LEK-KSC, 2017 WL 1240741, at *3 (D. Hawai`i
Mar. 30, 2017) ("A court may take judicial notice of the
existence of matters of public record, such as a prior order or

10

decision, but not the truth of the facts cited therein." (some citations omitted) (citing Lee v. City of Los Angeles, 250 F.3d 668, 689-690 (9th Cir. 2001); Interstate Natural Gas Co. v. S. Cal. Gas Co., 2009 F.2d 380, 385 (9th Cir. 1953) (holding a court may take judicial notice of records and reports of administrative bodies))).[4]

B.   **FACT 2 and FACT 3**

Higa next asks the Court to take judicial notice of a statement in Laurey v. Graham, 596 F. Supp. 2d 743, 754, n.3 (W.D.N.Y. 2008), and the text of Code 297.[5]  These requests are denied because any applicable case law and other legal authority can be considered without taking judicial notice.  See, e.g., Harms v. Select Portfolio Servicing, Inc., 703 F. App'x 538, 539 (9th Cir. 2017) ("The district court did not abuse its

---

[4] Lee was overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002).  See, e.g., Suulutaaq, Inc. v. Williams, 782 F. Supp. 2d 795, 806 n.100 (D. Alaska 2010).  Galbraith was abrogated on other grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). See, e.g., Yadin Co. v. City of Peoria, No. CV-06-1317-PHX-PGR, 2008 WL 906730, at *4 (D. Ariz. Mar. 25, 2008).

[5] 28 C.F.R. § 541.3 describes prohibited acts and the possible sanctions for those acts.  Code 297, which is among the "High Severity Level Prohibited Acts," states: "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act."  28 C.F.R. § 541.3, Table 1.

discretion in denying Harms's request for judicial notice
because the district court stated it would consider the case law
and authorities submitted by Harms in rendering a decision.").

C.   **FACT 4**

Higa asks this Court to take judicial notice of the
existence of a recording of the telephone calls in the Incident.
This request is denied because it relates to a fact that is
"subject to reasonable dispute."  See Fed. R. Evid. 201(b).

D.   **FACT 5 and FACT 6**

Finally, Higa asks this Court to take judicial notice
of the fact that two separate telephones were used in the
incident and the fact DHO Puukila does not have a specific
recollection of Higa's DHO hearing.  Higa submitted evidence
that two separate telephones were used.  [Higa Decl. at ¶¶ 8-9;
Petition, dkt. no. 1-3 (Crayton letter), dkt. nos. 1-4 to 1-6
(telephone pictures).]  Warden Kobayashi has not presented any
evidence to contradict this.  Further, Warden Kobayashi himself
submitted the declaration stating DHO Puukila does not have a
specific recollection of Higa's DHO hearing.  [Puukila Decl. at
¶ 12.]  Because what Higa identifies as FACT 5 and FACT 6 are
not "subject to reasonable dispute," Higa's request for judicial
notice is granted as to those facts.  However, taking judicial
notice of those facts does not constitute acceptance of Higa's
arguments regarding the significance of those facts.

12

The Court now turns to the merits of the Petition.

## II. __Ground Three__

The Court first turns to Higa's argument that he could not have violated Code 297 because the applicable regulation does not prohibit third-party, or three-way, calling.  Higa is correct that neither the term "third-party call," "third-party calling," "three-way call," nor "three-way calling" appears in Code 297.  See 28 C.F.R. § 541.3, Table 1.  However, Higa was not charged with making a third-party or three-way call; he was charged with "Telephone Abuse," in violation of Code 297.  See Petition, dkt. no. 1-2 (Incident Report); see also id., dkt. no. 1-7 at 1 (Higa DHO Report, OFFENSE CODE and SUMMARY OF CHARGES).  The fact that the Incident Report uses the term "three-way call" and the Higa DHO Report uses the term "three way call" to describe the general facts which formed the basis of the charge does not mean that a three-way call was a required element of the charge.  See Petition, dkt. no. 1-2 (Incident Report) at § 11; id., dkt. no. 1-7 at 2 (Higa DHO Report, § V (SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS)).

The cases that the Petition cites discussing three-way calling are not relevant to the violation of Code 297 that Higa was charged with.  See Higa Decl. at ¶ 13 (citing Laurey v. Graham, 596 F. Supp. 2d 743, 754 n.3 (W.D.N.Y. 2008)); id. at ¶ 20 (citing Braz-Gonzalez v. Warden, 2013 U.S. Dist. LEXIS

13

92242, *6 (ED Cal., June 30); <u>Donnelly v. Fed. Bureau of</u>
<u>Prisons</u>, 2012 U.S. Dist. LEXIS 85380, n.1 (D. Minn, May 30)).
Based on the plain language of the regulation, Code 297 does not
require a three-way call to establish a violation. Similarly,
the pre-2011 version of Code 297 cited in the Petition, which
did refer to three-way or third-party calling, is irrelevant
because the Incident occurred when the current version of
Code 297 was in force.

The Court therefore rejects Higa's argument that he
could not have violated Code 297 because he did not engage in a
three-way, or third-party, call. Higa's Petition is denied as
to Ground One.

## III. <u>Ground Four</u>

The Court next turns to Higa's argument that Code 297
is void for vagueness.

> "A statute is void for vagueness when it does not
> sufficiently identify the conduct that is
> prohibited." <u>United States v. Makowski</u>, 120 F.3d
> 1078, 1080–81 (9th Cir. 1997) (quoting <u>United</u>
> <u>States v. Wunsch</u>, 84 F.3d 1110, 1119 (9th Cir.
> 1995)). Courts have reasoned that vague statutes
> and regulations should be held void because:
> (1) individuals should not be punished for
> behavior they could not have known was illegal;
> [and] (2) vague laws allow arbitrary and
> discriminatory enforcement . . . . <u>Grayned v.</u>
> <u>City of Rockford</u>, 408 U.S. 104, 108–09, 92 S. Ct.
> 2294, 33 L. Ed. 2d 222 (1972); <u>see also</u> <u>United</u>
> <u>States v. Mincoff</u>, 574 F.3d 1186, 1201 (9th Cir.
> 2009) (a statute is impermissibly vague if it
> "'fails to provide a reasonable opportunity to
> know what conduct is prohibited, or is so

14

> indefinite as to allow arbitrary and
> discriminatory enforcement'"); <u>Foti v. City of
> Menlo Park</u>, 146 F.3d 629, 638 (9th Cir. 1998).
> The Court must assess a constitutional challenge
> based on vagueness in a common sense manner.   <u>See
> U.S. Civil Serv. Comm'n v. Nat'l Assoc. of Letter
> Carriers AFL-CIO</u>, 413 U.S. 548, 578-79, 93 S. Ct.
> 2880, 37 L. Ed. 2d 796 (1973) (noting that "there
> are limitations in the English language with
> respect to being both specific and manageably
> brief, and it seems . . . that although [a]
> prohibition[] may not satisfy those intent on
> finding fault at any cost," a prohibition is not
> vague if it is "set out in terms that the
> ordinary person exercising ordinary common sense
> can sufficiently understand and comply with").[6]

<u>Lane v. Salazar</u>, 911 F.3d 942, 950 (9th Cir. 2018) (some

alterations in <u>Lane</u>), *cert. denied*, 140 S. Ct. 167 (2019).

Higa argues Code 297 is unconstitutionally vague

because he could not have known his conduct during the Incident

would constitute a violation of Code 297.   <u>See</u> Petition at 7

(arguing Code 297 "Does Not Describe the Conduct I Engaged in as

a Prohibited Act" (capitalization in original)).   However, the

issue is not whether Higa was actually aware that his conduct

would violate Code 297; the issue is whether the regulation

"gives 'a person of ordinary intelligence fair notice of what is

prohibited.'"   <u>See</u> <u>Kashem v. Barr</u>, 941 F.3d 358, 371 (9th Cir.

2019) (quoting <u>United States v. Williams</u>, 553 U.S. 285, 304, 128

---

[6] <u>U.S. Civil Service Comm'n</u> was superseded by statute on
other grounds.   <u>See, e.g.</u>, <u>Bauers v. Cornett</u>, 865 F.2d 1517,
1522-23 (8th Cir. 1989).

S. Ct. 1830 (2008)).  In other words, the issue is whether "a
reasonable person would have known that" an inmate in FDC
Honolulu calling a person outside the facility and then asking
that person to call a third person using a second telephone fell
within the conduct prohibited by Code 297.  See id. (some
citations omitted) (citing Holder v. Humanitarian Law Project,
561 U.S. 1, 18, 130 S. Ct. 2705 (2010); Maynard v. Cartwright,
486 U.S. 356, 361, 108 S. Ct. 1853 (1988)).

Multiple district courts have rejected arguments that
Code 297 is void for vagueness.  See, e.g., Hewlett v. Kallis,
Court File No. 19-cv-1123 (WMW/LIB), 2020 WL 1359679, at *5 n.1
(D. Minn. Jan. 7, 2020), report and recommendation adopted, 2020
WL 1333134 (Mar. 23, 2020); Spotts v. Holt, Civil Action
No. 3:11-CV-1880, 2015 WL 4219751, at *6 (M.D. Pa. July 10,
2015); Royer v. Davis, Civil Action No. 10-cv-00982-REB, 2011 WL
1843327, at *3 (D. Colo. May 13, 2011).[7]  Although none of these

---

[7] The pre-2011 version cited by Higa in the Petition was at
issue in Royer.  See Royer, 2011 WL 1843327, at *2 ("Applicant
was charged with a violation of Code 297 (High Category),
defined as the "[u]se of the telephone for abuses other than
criminal activity, (e.g., circumventing telephone monitoring
procedures, possession and/or use of another inmate's PIN
number; third-party calling; third-party billing; using credit
card numbers to place telephone calls, conference calling;
talking in code).'" (alteration in Royer)).  However, the
vagueness analysis in Royer focused upon the "circumventing
telephone monitoring procedures" language, which is similar to
the language in the current version of Code 297.  See id. at *3
("Because 'circumventing telephone monitoring procedures' is
(. . . continued)

16

cases are binding on this Court, they are persuasive, and this Court agrees with their analyses of Code 297.  A reasonable inmate would have known that participating in a telephone call with another person outside of the facility while the other person used a second telephone to call a third person to relay a message from the inmate circumvents the facility's ability to monitor the inmate's telephone conversations.  Thus, a reasonable inmate would have known such conduct constitutes a violation of Code 297.

This Court therefore rejects Higa's argument that Code 297 is void for vagueness.  Higa's Petition is denied as to Ground Four.  Finally, this Court turns to the related arguments in Grounds One and Two.

## IV.  **Grounds One and Two**

In Ground One, Higa contends his due process rights were violated because his evidence was not considered during his DHO hearing and, in Ground Two, he argues there was no evidence to support the finding that he violated Code 297.

> "It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'"  Mitchell v. Maynard, 80

listed as one of the examples of prohibited acts under Code 297, Code 297 clearly applies to Applicant's conduct.  As a result, the rule is not unconstitutionally vague as applied to Applicant.").

F.3d 1433, 1444 (10th Cir. 1996) (quoting <u>Taylor v. Wallace</u>, 931 F.2d 698, 700 (10th Cir. 1991)). However, prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  <u>Wolff [v. McDonnell]</u>, 418 U.S. [539,] 556, 94 S. Ct. 2963 [(1974)].  Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1269 (9th Cir. 1989), (citing <u>Superintendent, Mass. Correctional Inst. v. Hill</u>, 472 U.S. 445, 454-55, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985)).[8]

    When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  <u>Hill</u>, 472 U.S. at 454, 105 S. Ct. 2768; <u>Wolff</u>, 418 U.S. at 563-67, 94 S. Ct. 2963.  Furthermore, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record."  <u>Hill</u>, 472 U.S. at 455, 105 S. Ct. 2768 (citations omitted).

<u>Alexander v. Schleder</u>, 790 F. Supp. 2d 1179, 1185-86 (E.D. Cal. 2011), *aff'd*, 508 F. App'x 605 (9th Cir. 2013).  The "some evidence" standard

    is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." <u>United States ex rel. Vajtauer v. Commissioner of Immigration</u>, 273

---

    [8] <u>Bostic</u> was overruled on other grounds in <u>Nettles v. Grounds</u>, 830 F.3d 922 (9th Cir. 2016).

U.S.[ 103,] 106 [(1927)].  Ascertaining whether
this standard is satisfied does not require
examination of the entire record, independent
assessment of the credibility of witnesses, or
weighing of the evidence.  Instead, the relevant
question is whether there is any evidence in the
record that could support the conclusion reached
by the disciplinary board.  See ibid.; United
States ex rel. Tisi v. Tod, 264 U.S. 131, 133–134
(1924); Willis v. Ciccone, 506 F.2d 1011, 1018
(CA8 1974).  We decline to adopt a more stringent
evidentiary standard as a constitutional
requirement.  Prison disciplinary proceedings
take place in a highly charged atmosphere, and
prison administrators must often act swiftly on
the basis of evidence that might be insufficient
in less exigent circumstances.  See Wolff, 418
U.S., at 562–563, 567–569.  The fundamental
fairness guaranteed by the Due Process Clause
does not require courts to set aside decisions of
prison administrators that have some basis in
fact.  Revocation of good time credits is not
comparable to a criminal conviction, id., at 556,
and neither the amount of evidence necessary to
support such a conviction, see Jackson v.
Virginia, 443 U.S. 307 (1979), nor any other
standard greater than some evidence applies in
this context.[9]

Hill, 472 U.S. at 455–56 (some alterations in Hill).

    Higa presented testimony that he had the Crayton

Letter and the Telephone Photographs ready to present during the

DHO hearing, but DHO Puukila refused to consider them.  [Higa

Decl. at ¶¶ 16, 18.]  The Higa DHO Report states: "Inmate Higa

#95700-022 stated he placed a telephone call to his brother and

---

    [9] Jackson was superseded, in part, on other grounds by 28
U.S.C. § 2254(d).  See, e.g., United States v. Markham, No. CR F
08–065 LJO, 2010 WL 2650717, at *9 (E.D. Cal. July 1, 2010).

then his brother placed another telephone call to a third person.  Inmate Borja #10381-122 did not submit any written documentation or evidence on his behalf for consideration by the DHO."[10]  [Petition, dkt. no. 1-7 at 1 (Higa DHO Report, § III.B (Summary of inmate statement)).]  However, DHO Puukila states Higa "waived his rights to a staff representative and to present witnesses and documentary evidence for his defense against the violation," and DHO Puukila "noted that [Higa] did not have any documentary evidence to present for [DHO Puukila's] consideration."  [Puukila Decl. at ¶¶ 10-11.]  Although he does not remember Higa's hearing, based on his usual practice when conducting such hearings, DHO Puukila is "confident that [Higa] did not present any documentary evidence at [Higa's] DHO hearing for [his] consideration."  [Id. at ¶¶ 12-13.]

        Although there is a conflict in the record regarding whether Higa was allowed to present evidence at the DHO hearing, it is not necessary for this Court to resolve the conflict.

_____

        [10] The reference to Inmate Borja was likely a typographical error that did not affect the merits of either Higa's defense to the alleged violation or his administrative appeals.  Further, the error was subsequently corrected.  See Petition, dkt. no. 1-7 at 9 (response to Central Office Administrative Remedy Appeal, stating "during our review, a typographical error was discovered in your DHO report.  The DHO report will be corrected and you will receive an amended copy.  This typographical error did not hinder your ability to muster a defense or violate your Due Process rights.").

Depriving an inmate of the opportunity to present evidence in his defense to a disciplinary charge may be a violation of his right to due process.  See Hill, 472 U.S. at 454.  However, the harmless error analysis applies to § 2241 petitions.  See, e.g., Brown v. McGrew, No. EDCV 12-1479-SVW (JPR), 2013 WL 6512948, at *6 (C.D. Cal. Dec. 12, 2013) (citing Fields v. Norwood, No. EDCV 08-173-VAP (OP), 2010 WL 2104651, at *4 (C.D. Cal. Mar. 31, 2010) (applying harmless-error review to § 2241 petition alleging violation of due process in federal prison disciplinary proceeding and collecting cases), *accepted by* 2011 WL 2940973 (C.D. Cal. July 19, 2011), *aff'd*, 490 F. App'x 65 (9th Cir. 2012)).  Even if this Court considers the Crayton Letter and the Telephone Photographs, there is still "evidence in the record that could support the conclusion reached by" DHO Puukila.  See Hill, 472 U.S. at 455-56.

It is undisputed that Higa used a FDC Honolulu telephone for an activity which was not illegal.  However, even if FDC Honolulu staff who were monitoring Higa's call to Crayton could hear the contents of the simultaneous call which Crayton placed to Syna on the gold telephone while Crayton was still on the call with Higa on the black telephone, Higa's use of the FDC telephone was abusive because the use of two telephones circumvented the FDC Honolulu staff's ability to monitor the number that Crayton called to reach Syna.  See 28 C.F.R.

21

§ 541.3, Table 1, Code 297; see also Petition, dkt. no. 1-7 at 1
(Higa DHO Report, § III.B (Summary of inmate statement)), 2
(Higa DHO Report, § V (SPECIFIC EVIDENCE RELIED ON TO SUPPORT
FINDINGS)).  Thus, there was "some evidence" supporting DHO
Puukila's finding that Higa violated Code 297.  Higa's Petition
is denied as to Ground Two.

Because there was some evidence supporting the finding
that Higa violated Code 297, even if DHO Puukila violated Higa's
due process rights by refusing to consider the Crayton Letter
and the Telephone Photographs, the error was harmless because,
even considering that evidence, there would still have been some
evidence supporting the finding that Higa violated Code 297.
Further, accepting Higa's testimony presented in support of the
Petition, he knew at the time of the DHO hearing that DHO
Puukila refused to consider the Crayton Letter and the Telephone
Photographs.  This is confirmed by the Higa DHO Report, which
states no documents or evidence was submitted on the inmate's
behalf.  See Petition, dkt. no. 1-7 at 1 (Higa DHO Report,
§ III.B).  Higa raised his inability to present documentary
evidence during the DHO hearing as an issue in his regional
appeal.  [Id. at 4 (Regional Administrative Remedy Appeal form
dated 6/9/19).]  The argument was rejected.  [Id. at 6 (response
dated 7/16/19 by Regional Director, stating: "Through [sic] you
claim you were denied the ability to submit these documents and

the DHO dismissed them verbally, the discipline packet contradicts your claims and indicates you did not present documentation for consideration.").]  In Higa's appeal at the national level, it was found that Higa's "Due Process rights were upheld during the discipline process."  [Id. at 9 (response dated 10/25/19 by Administrator, National Inmate Appeals).] Thus, Higa had a full and fair opportunity in his administrative appeals to litigate the denial of the ability to present evidence during the DHO hearing.  Even if DHO Puukila did refuse to consider the Crayton Letter and the Telephone Photographs, there is no evidence that the evidence would have changed the outcome of either Higa's DHO hearing or the subsequent administrative appeals.  The error is therefore harmless, and Higa is not entitled to relief as to Ground One.  See Brown v. McGrew, 2013 WL 6512948, at *6 ("But even if, as Petitioner contends, he was denied his right to call Jones as a witness, habeas relief is still not warranted because Petitioner has not offered any evidence as to how Jones might have testified or how his testimony would have helped Petitioner's case.").

Because each ground in the Petition fails as a matter of law, Higa's Petition is denied.

**V.    Certificate of Appealability**

In the context of a 28 U.S.C. § 2254 petition,[11] this district court has stated:

> Rule 11(a) of the Rules Governing Section 2254 Cases requires a district court to rule on whether a petitioner is entitled to a certificate of appealability when it enters a final order adverse to the applicant.  See also, Fed. R. App. P. 22(b).  Reasonable jurists would not find the dismissal of Williams's Petition as unexhausted as debatable or wrong.  See Gonzalez v. Thaler, 565 U.S. 134, 141 (2012).

Williams v. Espinda, CIV. NO. 19-00478 LEK-RT, 2019 WL 4418016, at *4 (D. Hawai`i Sept. 16, 2019).  Reasonable jurists would not find that the rulings in this Order regarding Higa's Petition are debatable.  A certificate of appealability therefore will not be issued.

## CONCLUSION

On the basis of the foregoing, Higa's Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus, filed December 13, 2019, is HEREBY DENIED.  In addition, this Court DENIES a certificate of appealability.

---

[11] The rules applicable to § 2254 petitions also apply to petitions brought under § 2241.  See, e.g., Tanner v. MacDonald, Civ. No. 11-00255 SOM/RLP, 2011 WL 1598838, at *1 n.2 (D. Hawai`i Apr. 27, 2011) (some citations omitted) (citing Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001); United States v. Recinos-Gallegos, 151 F. Supp. 2d 659 (D. Md. 2001)); see also § 2254 Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a).").

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 27, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

BRYAN HIGA VS. HIROMICHI KOBAYASHI WARDEN; CV 19-00664 LEK-WRP; ORDER DENYING PETITION UNDER 28 U.S.C. § 2241 FOR A WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY